ORIGINAL

**GREGORY BANKS**
**ALEXIS AVALOS**
5623 Rosscommon Way
Antioch, CA  94531
Telephone:  925-787-7615
banksgregorya@gmail.com

Plaintiffs pro per



# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

CV 18 7391

EDL

BY FAX

Greg Banks; Alexis Avalos; Estate of
Nathan Banks (Deceased)

        Plaintiffs,

v.

Officer Michael Mortimer,  Detective
James Colley,  CITY of Antioch,
COUNTY of Contra Costa, Contra
Costa County Coroner David O.
Livingston, Deputy District Attorney
Barry Grove,  James Alexander,
Matthew P. Guichard and DOES.

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case Number: _____

**COMPLAINT FOR DAMAGES**

**DEMAND FOR JURY TRIAL**

## JURISDICTION

1.    This case involves a violation of civil rights under Title 42 United

States Code §1983 and §1988 and related State claims.

## VENUE

2.      Venue is proper because events occurred in Antioch, California.

## INTRADISTRICT

3.      The case should be assigned to San Francisco/Oakland division because these events happened in Contra Costa COUNTY.

## PARTIES

4.      Nathan Banks is deceased.   He lived in Antioch, California and was unmarried when he was killed.

5.      Greg Banks is Nathan's father.  He lives in Antioch, CA.

6.      Alexis Avalos is Nathan's daughter.  She lives in Las Vegas, Nevada.

7.      Defendant, Michael Mortimer, individual and official capacity as Antioch police officer and supervisor to K9 Officer Ryan White.

8.      Defendant, James Colley, individual and official capacity as Antioch police officer.

9.      Defendant, CITY of Antioch ("CITY") is a municipal corporation responsible for Antioch Police Department and its employees.

10.     Defendant, COUNTY of Contra Costa ("COUNTY") is responsible for policies and conduct of its agencies, agents and employees.

11.     Defendant, David Livingston, individual and official capacity as employee of Contra Costa COUNTY CORONER.  CORONER has a duty to investigate the facts and circumstances in law enforcement fatal incidents to determine manner of death.

12.     Defendant, Barry Grove, individual and official capacity as employee of Contra Costa COUNTY in district attorney's office.  Grove acted in an investigative role and as a supervisor of investigators.

13. Defendant, James Alexander, individual and official capacity as an employee of Contra Costa COUNTY district attorney's office.

14. Defendant, Matthew P. Guichard, individual and official capacity under contract to COUNTY.  Guichard acted in an administrative or investigative capacity as fact finder for CORONER in the inquest of Nathan's death.  Guichard publicly spoke for and represented former district attorney Mark Peterson in disbarment proceedings following Peterson's felony perjury conviction and June 2017 resignation from office.[1]

15. Plaintiffs do not know the names and capacities of everyone involved because Defendants have refused to show Plaintiffs records of the investigation, witness statements, video footage,  public records, or other evidence.  Plaintiffs will ask to amend this complaint with names and acts of unknown Defendants (DOES) when discovered.  References to Defendant(s) in these claims apply to the all unknown DOES.

16. All paragraphs apply to all of the claims below.

---

[1] *East Bay Times, Oct. 03, 2017 and March 03, 2018*

## SUMMARY OF ACTION

17. Antioch Police Officer Michael Mortimer beat, shot and killed Nathan Banks after he cornered Nathan in the passenger seat of a parked car, hit Nathan in the head with a flashlight and threatened deadly force pointing his gun at Nathan's head. In a late night foot chase, Officer Mortimer fired at Nathan - striking him in the head, the back of the shoulder into his chest and in the buttocks striking squarely from behind.

18. After Officer Mortimer beat and fatally shot Nathan, Antioch K9 officer Ryan White deployed a police dog to attack Nathan.

19. CITY OF Antioch police declared an investigation supervised by Contra Costa COUNTY district attorney's office was undertaken according to the *Law Enforcement Involved Fatal Incidents* (LEIFI) protocol.

20. Antioch police released official statements which did not match witness statements, citizen reports, or media disclosures.

21. COUNTY Coroner David Livingston held an inquest to disclose the facts determined by investigation into Nathan's death. No legitimate objective inquiry was made nor evidence offered at the inquest. No civilian or third party witnesses were called. No physical, documentary, or demonstrative evidence was available.

22. COUNTY Corner Livingston closed the investigation of Nathan's death certifying cause of death as an "accident."

23. Nathan's dad, Greg Banks asked Antioch police and COUNTY district attorney office about circumstances and conflicting reports of his son's death. Specifically, he asked for legal evidence and to see home

security videos confiscated by Antioch police about four days after Nathan was killed.

24.   Despite discrepancies in law enforcement accounts, misstatements of officials, and facts omitted or withheld from public disclosure, COUNTY deputy district attorney Barry Grove chose not to investigate.

25.   Antioch Police and Contra Costa County district attorney's office control of material evidence and investigatory facts and their refusal to disclose leaves Nathan's family no way to understand law enforcement involvement and with no means to redress conduct related to Nathan's death other than filing this claim.

26.   This is a civil rights, wrongful death, and survival action for violation of rights under the United States Constitution and/or California law in connection with the law enforcement involved fatal incident, shooting and death of Nathan Banks and deprivation of rights under color of law.

## STATEMENT OF FACTS

27.   On June 16, 2017, Nathan Banks and Jennifer Caldwell were sitting in a car parked in front of Jennifer's house near 2304 Manzanita Way, Antioch, CA about 11:30 p.m.

28.   Jennifer was on the driver side.  Nathan sat on the passenger side.

29.   Antioch Officer Michael Mortimer drove a police vehicle with bright overhead search lights illuminated up the street toward the parked car

30.   Mortimer pulled along side the parked car and spoke to Jennifer, addressing her by name.

31.   Mortimer left his police vehicle in the middle of the street and walked in front of the parked car to the passenger side where Nathan was seated.

32.   Without any lawful reason, Officer Mortimer blocked the passenger
      door confining Nathan to the car.  Mortimer described blocking the
      passenger door by taking a stance with his left leg in front of the right.[2]

33.   There was no suspicious activity, no traffic stop, and no indication of
      any crime in progress according to Mortimer and public police reports
      published by Antioch police at CrimeReports.com.

34.   Officer Mortimer suddenly struck Nathan in the head with a flashlight
      and aimed his gun at Nathan while Nathan was seated in the car.

35.   Mortimer estimated it was less than 45 seconds from the time he
      blocked the car door until he struck Nathan in the head with a
      flashlight.

36.   An eye witness observed Mortimer hit Nathan so hard blood gushed
      from his head and spattered all over the inside the car.  Nathan suffered
      a deep laceration to his forehead and a fractured skull.  Multiple blunt
      force head injuries on the right, fractures at the base of his skull and a
      five (5) inch long fracture over the top of the skull were documented by
      autopsy.

37.   Officer Mortimer had no objective facts to believe that Nathan posed
      any immediate serious threat of harm to anyone.  Mortimer reported he
      did not believe Nathan was trying to hurt him.[3]

38.   An eye witness reported Nathan was unarmed and had made no
      threatening comment or movement.

39.   Officer Mortimer allowed Nathan to get out of the car.

---

[2] *Inquest Transcript, Mortimer, 10 Oct 2017 41:9-12*

[3] *Inquest Transcript, Mortimer, 10 Oct 2017 43:12*

40. According to eye witnesses, Nathan bloodied about the head and dazed stumbled and fell to the ground.

41. Fearing for his life, Nathan justifiably tried to flee after suffering a bloody forceful blow to the forehead by a flashlight and the continued threat of deadly force.

42. Officer Mortimer said he decided to let Nathan run but changed his mind and chased Nathan on foot without calling for backup.

43. Home security videos showed Officer Mortimer chasing Nathan across a driveway into an unlit alleyway and an apparent physical confrontation before Nathan was killed.

44. Antioch Lieutenant D. Bittner stated Officer Mortimer caught Nathan near a porch and a struggle ensued before Mortimer shot Nathan.[4]

45. Witnesses heard the sound of the fence breaking but did not recall hearing any warning before hearing four loud pops.

46. Defendant Officer Mortimer fired his gun striking Nathan at least three (3) times as Nathan was fleeing.

47. One shot struck Nathan squarely from behind in the left buttocks.

48. A fatal gunshot entered the back of Nathan's left shoulder and traveled into his chest.

49. A fatal gunshot struck Nathan in the head behind his left ear.

50. After Officer Mortimer shot Nathan in the head and the chest, K9 Officer Ryan White ordered a police dog to attack Nathan's lifeless body. An emergency responder noted Nathan's right ankle so severely injured the foot was nearly severed from his leg.[5]

---

[4] *Antioch Herald, 20 June 2017, Lt. D Bittner*

[5] *CCC Fire Patient Care Report 06/16/2017 pg. 2*

51. Officer Mortimer was the shift supervisor in charge of K9 Officer White and other officers that night.

52. CITY of Antioch police publicly declared an investigation was undertaken supervised by COUNTY district attorney's office according to the *Law Enforcement Involved Fatal Incidents* (LEIFI) protocol ("Protocol").

53. Antioch Lieutenant D. Bittner released official statements which did not match citizen reports, media investigation, and witness statements.

54. Home security cameras captured video of the events.  Video clips appeared in online media reports. Antioch police confiscated the videos about four days after Nathan was killed.

55. A coroner inquest was held to disclose the facts and circumstances determined by investigation of Nathan's death.

56. DEFENDANT CORONER David Livingston delegated his authority to attorney Matthew Guichard to direct the inquest.

57. DEFENDANT Matthew Guichard called no citizen or third party witnesses in investigation of Nathan's death.

58. No physical, documentary, or demonstrative evidence was offered.

59. DEFENDANT Guichard suggested witness responses by including information in his questions.  For example, "…you feared for your safety.  Can you describe for us the reasons you shot?"[6]  Asking about a weapon moved at the scene, "Approximately how much? A couple feet?"[7]

---

[6] Inquest Transcript, Guichard, 10 Oct 2017 47:25-48:01

[7] Inquest Transcript, Guichard, 10 Oct 2017 63:2-3

60.   Pathologist Arnold Josselson described the fatal gunshot to Nathan's chest omitting the fact - the gunshot struck the back of Nathan's left upper arm just below the shoulder.[8,9] He repeated three times the bullet entered the chest, twice repeated the bullet entered the left arm. In the autopsy report Josselson described entry "posterior left upper arm at a point 18.5 cm below the top of the shoulder." The report was not disclosed until weeks after the inquest.

61.   Asked about significant injuries, Josselson did not mention extensive blunt force head injury - including multiple skull fractures to the right side, back and base of the head and a 5 inch fracture over the top of the head inflicted prior to the fatal gunshot striking the left side of Nathan's head.

62.   Detective James Colley, lead investigator for Antioch police, reported third hand information related in a report by Antioch Detective Rick Hoffman summarizing statements allegedly made to Hoffman in a conversation with eye witness Jennifer Caldwell.

63.   Detective James Colley, the lead investigator for Antioch police in the investigation of Antioch officer Michael Mortimer shooting and killing Nathan Banks, offered hearsay commentary on Nathan's character and behavior history.

64.   Colley said the disparaging remarks and stories were told to him by a woman claiming to be Nathan's fiance.

---

[8] *Inquest Transcript, Josselson, 10 Oct 2017 25:3-9*
[9] *Autopsy, Josselson, 19 June 2017 pg 3 paragraph 1*

65.   DEFENDANT GUICHARD not only invited the prejudicial comments but vouched for the existence and documentation of the out of court statements characterizing COLLEY'S contact with the woman as an "interview" and telling COLLEY, "That was tape recorded as well, that interview with the woman..."

66.   COLLEY said he and his partner, Jason Vanderpool along with COUNTY DA INSP. JAMES ALEXANDER traveled to Fairfield to meet the woman in her home where they were welcomed in to her home for a cordial conversation where she offered nothing but derogatory comments about Nathan.

67.   The reality is the woman appeared on tv news criticizing the police and making allegations of excessive use of force the morning Nathan's death was reported.[10]

68.   The commentary reported by COLLEY raises a question of fabricating reports and intimidating witnesses  and is highly suspect because (1) the woman appeared on tv news criticizing police conduct and the use of excessive force; (2) the woman was supposedly engaged to marry decedent; (3) COUNTY DA Inspector Alexander and Antioch Det. COLLEY reported different dates and details of the contact with the woman.  (4) ALEXANDER reported two officers - ALEXANDER and COLLEY - made the contact "two or three days" after Nathan's death on June 16. (5) Det. COLLEY reported three officers - ALEXANDER, COLLEY, and Jason Vanderpool - made the contact June 28.[11]

---

[10]   *KRON Channel 4 17 June 2017 https://youtu.be/R7cHFp5Lf4s*
[11]   *Inquest Transcript, Colley, 10 Oct 2017,  80:19-23, 92:2-5*

69.   DEFENDANT JAMES ALEXANDER, lead investigator for COUNTY was asked to expound on the *Law Enforcement Involved Fatal Incident Protocol.* He was not asked about contact with any material witness, factual observations, physical investigation or forensic result.

70.   Coroner's inquest is a public hearing required by law (Gov Code 27491) to disclose the facts and circumstances determined by investigation of death when law enforcement is involved in a citizen death.  The transcript of witness testimony is required by law to be filed with the COUNTY clerk or the coroner's office as a public record.[12]

71.   A Google search reveals DEFENDANTS and most of the investigators and officials reportedly involved in these events have been the subject of multiple claims of misconduct. (COUNTY DA INSP. JAMES ALEXANDER excepted.)  Those claims include excessive force fatalities, planting and fabricating evidence, false reports, witness intimidation, and conspiring to violate citizen civil rights.

72.   Despite conflicts in official reports, physical evidence of gun shots striking Nathan from behind, and blunt force head injury including multiple skull fractures on the right side and back of the head, COUNTY CORONER David Livingston closed the investigation into Nathan's death following the inquest.

73.   A coroner investigative summary dated June 2017 by deputy coroner Kevin Hoffman was sent to Plaintiff Greg Banks.

---

[12] Ca Gov 27503

COMPLAINT
- 11 -

74. Deputy coroner K. Hoffman's June 17 report differed from the reports of Antioch officers.[13]

75. Hoffman characterized the contact as a suspicious person stop while it is uncontroverted Officer Mortimer did not initiate a suspicious person or investigative stop before contacting Nathan.

76. Hoffman reported Decedent sitting on the driver side of a parked car before exiting the car "reaching in to his waistband." Mortimer made a point that Nathan was on the passenger side of the car describing how Mortimer deliberately walked around the front of the car to the passenger side.

77. Hoffman reported Antioch officer delivered body strikes with his flashlight but did not report Mortimer striking Nathan in the head with his flashlight.

78. Hoffman wrote Officer Mortimer held Decedent at gunpoint after shooting him until backup arrived.

79. Deputy coroner Kevin Hoffman's account of events preceding and after the shooting bear no resemblance to Antioch official reports or Officer Mortimer's statements.

80. Deputy coroner Kevin Hoffman assumed jurisdiction of Nathan's body some time after 5:00 am Saturday, June 17.

81. Hoffman did not report seeing a weapon at the scene nor indicate protecting decedent's hands for forensic examination standard procedure in deaths involving firearms.

---

[13] *Coroner Summary, 17 June 2017, Deputy K. Hoffman*

82. Conflicting and contradictory accounts have continued to emerge that are unreconciled with the investigation reportedly conducted and official public version of events.

83. CITY and COUNTY have not disclosed any report or subsequent factual information. Both the CORONER investigation and district attorney criminal inquiry are effectively closed.

84. Defendants continue to deny Plaintiff Greg Banks's request for public records, reports, video tape footage and investigation reports into Nathan's death.

85. California Government Code section 12525 requires local law enforcement agencies to report details related to use of force and fatal incidents to State of California Department of Justice within 10 days of the incident.

86. Required use of force and fatal incident reports related to the law enforcement involved fatal incident that resulted in Nathan's death are inaccurate and misleading as of June 11, 2018.[14]

87. CITY of Antioch apparently classified and reported Nathan's death in June 2017 as a "justifiable homicide" - before any investigation, discrediting witness statements and ignoring conflicting information while purportedly operating according to the *Law Enforcement Involved Fatal Incident* investigation Protocol.

88. California DOJ Death in Custody Data record number "2017521" regarding manner of Nathan's death was reported by Antioch officials the same month Nathan was killed and reflects "Homicide Justified (Law Enforcement Staff)."

---

[14]State of California, Department of Justice, Death in Custody Data, 2005-2017. Sacramento, California, June 2018.

89.   Misinformation Antioch reported on record with California Department of Justice regarding the facts and circumstances related to Nathan's death include:

1. Relationship between Mortimer and Decedent reported "strangers." Actual:  Mortimer said he had known Nathan for 20 years since they attended Antioch High School together; Citizens reported Mortimer had a contentious history with Nathan.

2. Reason for contact reported  "crime in progress." Actual:  Mortimer admitted there was no suspicious person, activity, suspected crime in progress or investigatory stop when he decided to leave his police car in the street and walk around the front of the parked car to the passenger side where Nathan was seated.

3. Injuries reported "head and front of chest." Actual: Two bullets struck Nathan from behind; Gunshot to the chest entered through the **back** of his left arm traveled to the chest.

4. Injuries not reported:  No record that Mortimer struck Nathan in the forehead with a flashlight using severe and potentially deadly force before Mortimer chased and shot Nathan.

5. Injuries not reported:  No record of body strikes with a flashlight reported by deputy coroner K. Hoffman and consistent with injuries reported at autopsy.

6. Injuries not reported:  No record of use of K9 force after Mortimer fatally shot Nathan.

90.   COUNTY District Attorney Diana Becton ("DA Becton") announced in May 2018 all investigative reports of law enforcement involved fatal incidents which did not result in criminal charges against an officer

COMPLAINT
- 14 -

1
2
3

would be released to the public.  Four reports were released at that time from incidents in 2016 and 2017.  No report was released regarding Nathan's death in June 2017.

4
5
6
7
8
9
10

91.   DA Becton formally announced on Oct. 29, 2018 that all reports of law enforcement involved fatal incidents which did not result in criminal charges against an officer would be released including the investigative facts and legal reasoning of the investigation result.  Reports from December 2017 to thru October 2018 were released at that time.  As of this filing, no investigative reports related to Nathan's death in June 2017 have been released.

11
12
13
14
15
16
17
18
19
20

92.   Allowing police to withhold the relevant facts and evidence from DECEDENT'S representatives and PLAINTIFFS related to a death caused by a police officer creates an unjust effect of allowing officers to violate citizen rights under color of law, abuse police power, unlawfully injure and kill citizens they are supposed to protect with impunity.  Without timely access to facts, related proof other than vague and unsubstantiated reports not collected by means of any proper investigation, DECEDENTS and PLAINTIFFS are denied due process access to the courts with no means to effectively remedy violation of fundamental rights.

21
22

93.   Plaintiffs timely filed government claims with CITY of Antioch and COUNTY of Contra Costa which were both rejected.

23
24
25
26
27
28

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Fourth Amendment – Seizure - 42 U.S.C. Section 1983**

94.  DEFENDANT OFFICER MORTIMER physically blocked Nathan inside the parked car without lawful purpose and used unreasonable and excessive deadly force which violated Nathan's right to be secure in his person against unreasonable searches and seizures.

95.  When DEFENDANT OFFICER MORTIMER positioned himself blocking the passenger car door by taking a specific stance and confining Nathan to the parked car, Officer Mortimer did not have particular facts or reasonable suspicion to detain Nathan.

96.  OFFICER MORTIMER'S conduct caused Nathan to suffer serious head injuries while confined in the car and set in motion the events ultimately resulting in Nathan's death.

97.  OFFICER MORTIMER had a history of animosity toward Nathan.

98.  DEFENDANT OFFICER MORTIMER acted with the intent to harm and with a deliberate disregard of Nathan's rights and indifference to the risk of severe injury and death to Nathan and disregard for rights and safety of Plaintiffs as well as others.

### SECOND CAUSE OF ACTION
**Fourth Amendment – Excessive Force 42 U.S.C. Section 1983**

99.  DEFENDANT OFFICER MORTIMER used unreasonable, provocative, excessive and deadly force which violated Nathan's right to be secure

1

2

in his person free from physical violence and unreasonable and
excessive use of force.

3

4

5

100. DEFENDANT OFFICER MORTIMER used excessive force when he struck
Nathan in the head with a flashlight and aimed a gun at Nathan's head
after constraining Nathan to a parked car.

6

101. Nathan did not pose any immediate threat to Officer Mortimer.

7

102. OFFICER MORTIMER did not believe Nathan was trying to hurt him.[15]

8

9

10

103.  An eye witness reported Nathan was unarmed and had not made any
threatening movement when Officer Mortimer suddenly struck Nathan
in the head so hard blood spattered all over the inside of the car.

11

12

13

104. DEFENDANT OFFICER MORTIMER used excessive and unreasonable
deadly force under the circumstances when he chased, shot and killed
Nathan Banks.

14

15

16

105. When DEFENDANT OFFICER MORTIMER together with K9 Officer Ryan
White deployed a police dog to bite Nathan, the use of force was
excessive and unreasonable under the circumstances.

17

18

19

20

106. OFFICER MORTIMER knew he had shot Nathan in the head and in the
chest and he had hit Nathan in the head with a flashlight.  Mortimer
reported he observed Nathan lying on the ground motionless after he
saw Nathan collapse from fatal injuries.

21

22

23

24

107. DEFENDANT OFFICER MICHAEL MORTIMER was not involved in a tense,
uncertain, and rapidly changing situation requiring split-second
judgement about the use or amount of force in the particular situation.

25

26

27

28

[15] *Inquest Transcript, Mortimer, 10 Oct 2017 43:12*

108. OFFICER MORTIMER walked in front of the parked car to the passenger side. There was no indication of caution, protective posturing, or reasonable concern as if approaching a dangerous or suspicious person.

109. MORTIMER described choosing to stand on the curb above the window with the roof obstructing his line of sight.

110. No reasonable officer would choose such an imprudent position standing next to the car with the roof blocking visibility inside the car, late at night, so that any movement of any person inside the car would give rise to an excuse for the use of severe and potentially deadly force.

111. OFFICER MORTIMER intentionally created a threatening, provocative situation unnecessary and unreasonable under the circumstances.

112. DEFENDANT OFFICER MORTIMER acted with intent to harm, with deliberate and reckless disregard in manner shocking to the conscience in violation of Nathan's right to be secure in his person free from violent and unlawful use of government force.

113. DEFENDANT MORTIMER'S conduct caused Nathan Banks to suffer extreme and severe mental and emotional distress, anxiety, humiliation, agony and physical pain and death.

114. As a result of DEFENDANT OFFICER MORTIMER'S conduct, DECEDENT and PLAINTIFFS sustained serious and permanent injuries.

## THIRD CAUSE OF ACTION

**Supervisory and Municipal Liability - Unconstitutional Custom or Practice (Monell)**
**(42 U.S.C. Section 1983)**

115.   Defendants CITY and COUNTY officials, supervisors and managers, Antioch Police, COUNTY CORONER, and COUNTY DISTRICT ATTORNEY office leaders maintained a custom or practice that deprived DECEDENT and PLAINTIFFS of rights and liberties secured by the Fourth and Fourteenth Amendments.

116.   Individual DEFENDANTS acted according to longstanding practices and customs including but not limited to:

    a.   Using unreasonable and deadly force;
    b.   Failing to properly investigate use of force and fatal incidents;
    c.   Endorsing officer accounts of fatal incidents without investigation;
    d.   Discounting citizen witness reports of fatal incidents;
    e.   Controlling and withholding facts and evidence in investigation of law enforcement involved fatal incidents;
    f.   Conducting coroner inquest with prejudice to vindicate officers;
    g.   Denying injured parties, representatives, and families timely access to factual information and legal evidence in law enforcement involved injury and fatalities;
    h.   Misreporting use of force and death in custody incidents to California Dept. of Justice.

117.   It was the practice or custom of CITY of Antioch, Antioch Police and COUNTY DISTRICT ATTORNEY office with respect to law enforcement involved fatalities to conduct a minimal investigation designed to

exonerate the officer(s) without discovering or revealing facts controverting an officer's account.

118. It was the practice of COUNTY CORONER and DISTRICT ATTORNEY offices to conduct a coroner inquest to promote a one-sided version of events supporting, protecting, and exonerating law enforcement officers without introduction of legal evidence or adverse testimony while publicizing the inquest as an objective fact finding forum to put all the facts out in the open related to a law enforcement involved fatal incident.

119. DEFENDANTS should have known about repeated allegations and legal claims of unreasonable use of force and misconduct by CITY of Antioch police officers and COUNTY personnel, especially related to law enforcement fatal incidents and investigations.  For example:

a. High profile action against CITY and COUNTY in the shooting death and K9 attack of unarmed 20 year old Antioch man Charles Burns. Claims against Antioch officer (COLLEY) and COUNTY deputy district attorney (GROVE) for fabricating evidence, witness intimidation, false reports and conspiring to cover up misconduct 2013 May.[16]   (Case No. 3:14-00535-LB)

b. 2016 Feb 05 - Antioch man put in carotid choke hold by Antioch officers died by asphyxiation. Decedent sleeping pulled from car 3:30 a.m. beaten with flashlight.  Involved Antioch officer MICHAEL MORTIMER.

---

[16] East Bay Times 2/13/2018 re Burns v Concord https://bayareane.ws/2zGfj9N

c. 2015 June10 - Antioch man handcuffed, struck, thrown face first to ground died of asphyxiation during compliant arrest. Antioch officer (Rose) caught testifying under oath at coroner inquest concealing witness statements (Death of Rakeem Rucks, Case No. 3:16-cv-03742-EDL)

d. 2014 April 04 - Antioch man pulled from car while sleeping beaten unconscious by Antioch officer. Claim filed against involved officer JAMES COLLEY settled 5/31/17. (*Baldwin v. Colley*, Case No. C15-02762-KAW)

e. 2014 - Antioch officer shoots man in the chest, compliant with hands in air. Claim filed against involved officer JAMES COLLEY. (*Mabutas v Colley*, Case No. 4:14-cv-03796-KAW)

f. 2013 Aug 27 - Antioch officer shoots fleeing man in the back during foot chase. Claim filed against involved officer JAMES COLLEY.

g. 2010-11 - Antioch officer warrantless entry of residence, false arrest, theft of personal property. Claims for unlawful detention, false arrest and manufacture of evidence against involved officer MICHAEL MORTIMER. (*O'Toole, Leal et al v. City of Antioch*)

h. 2009 Nov 21 - Antioch man put in carotid choke hold by Antioch officer died of asphyxiation. Involved officer MICHAEL MORTIMER.

120.  Despite notice of repeated allegations of misconduct and cover up of investigations, DEFENDANTS condoned, ratified, or approved conduct of individual DEFENDANTS.

121.  DEFENDANTS acts and failures to act caused or contributed to injuries to DECEDENT and PLAINTIFFS by failing to deter future violations of rights by police officers and investigators.

122. DEFENDANTS acted with deliberate indifference, reckless and conscious disregard for the rights of DECEDENT and PLAINTIFFS.

123. As a result, DECEDENT suffered physical and emotional injury, pain and suffering, humiliation, loss of enjoyment of life, and loss of life. PLAINTIFFS suffered loss of family relationship, love, companionship and permanent injury.

## FOURTH CAUSE OF ACTION
### Fourteenth Amendment - Substantive Due Process (42 U.S.C 1983)

124. DECEDENT and PLAINTIFFS had a right to be free from deprivation of life or liberty without due process of law.

125. Officer MICHAEL MORTIMER seized, beat, shot and killed Nathan Banks before authorizing a police dog to attack Nathan's lifeless body.

126. DEFENDANTS working individually and in concert, imbued with government power and position, publicly disseminated misinformation in official published statements and public inquest, concealing facts and circumstances exclusively under DEFENDANTS control related to the incident that caused Nathan's death, depriving DECEDENT and PLAINTIFFS of the right to seek redress and access justice through the courts.

127. DEFENDANTS acted with deliberate indifference to the rights of DECEDENT and PLAINTIFFS in such a manner as to shock the conscience propagating misinformation while concealing key facts and evidence related to a citizen killed by police preventing consideration of facts that would form the basis of any timely, effective claims for redress.

128. DEFENDANTS acts and failures to act were the cause or a significant factor which prevented and undermined DECEDENT'S and PLAINTIFFS'S ability to make an effective claim interfering with their respective rights of access to court which resulted in permanent injury described to DECEDENT and PLAINTIFFS.

## FIFTH CAUSE OF ACTION
**Violation of Decedent's State Statutory Rights - California Civil Code 52.1**

129. California Civil Code Section 52.1 (the "Bane Act") prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights.

130. Conduct that violates the Fourth Amendment violates the California Bane Act.

131. Defendant Officer Mortimer committed acts of violence against DECEDENT Nathan Banks including shooting him at least three (3) times, striking Nathan in the head and body with a flashlight and authorizing a police dog attack without justification.

132. Defendant Mortimer's conduct constituted interference and attempted interference by threats and intimidation with DECEDENT Nathan Banks's enjoyment of rights secured by the Constitution and laws of the United States and State of California, in violation of California Civil Code 52.1.

133. Defendant Mortimer's actions interfered with DECEDENT's rights - to be free from unreasonable searches and seizures, to due process, to

equal protection of the laws and to be free from unreasonable use of force and actions that shock the conscience in depriving of life, liberty or property.

134.   Defendant intentionally committed the acts to discourage DECEDENT from exercising his civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights.

## SIXTH CAUSE OF ACTION
### Battery – Survival and Wrongful Death

135.   Defendant Officer Mortimer, a police officer for CITY of Antioch, without provocation, necessity or legal justification, assaulted and battered DECEDENT by shooting him at least three (3) times and intentionally striking DECEDENT in the head and body with a flashlight and/or other object, with unreasonable and excessive force causing DECEDENT's injuries and death.

136.   As a direct result of Defendant Mortimer's assault and battery of DECEDENT Nathan Banks, DECEDENT suffered physical injuries, pain and agony and died.

137.   The conduct of Defendant Mortimer was intentional, malicious and in reckless disregard of DECEDENT'S and PLAINTIFFS'S constitutional rights under California Law.

## JURY DEMAND

138.   Plaintiffs demand a jury trial in this action.

1

2                                **PRAYER**

3

4   1.  For general and special damages including both survival and wrongful

5       death damages in amount to be determined;

6   2.  For punitive and exemplary damages provided by law;

7   3.  For funeral and burial expenses;

8   4.  For attorney's fees;

9   5.  For expenses and costs of suit;

10  6.  For other and further relief as the Court finds proper.

11

12

13

14

15  Date:  30 November 2017          Sign Name: _____

16

17                                  Print Name: GREGORY BANKS

18

19

20  Date: 30 November 2017           Sign Name: _____

21

22                                  Print Name:  ALEXIS AVALOS

23

24

25

26

27

28                                  COMPLAINT