UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY A BANKS, et al.,<br>Plaintiffs,<br>v.<br>MICHAEL MORTIMER, et al.,<br>Defendants. | Case No. 18-cv-07391-HSG<br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**<br>Re: Dkt. Nos. 15, 17, 18 |

Plaintiffs, proceeding pro se, bring this civil rights action against the City of Antioch, Contra Costa County, and individual employees of both the City and County,[1] following the death of Nathan Banks. *See* Dkt. No. 1 ("Complaint" or "Compl.").

Pending before the Court are three motions to dismiss Plaintiffs' complaint for failure to state a claim: the first, filed by Defendants Livingston, Grove, Alexander, and Contra Costa (collectively, "County Defendants"), *see* Dkt. No. 15 ("County Mot."); the second, filed by Defendants Mortimer, Colley, and Antioch (collectively, "City Defendants"), see Dkt. No. 17 ("City Mot."); and the third filed by Defendant Guichard, *see* Dkt. No. 18 ("Guichard Mot."). The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). Having carefully considered the parties' arguments, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motions to dismiss.

I. BACKGROUND

According to the complaint, at approximately 11:30 p.m. on June 16, 2017, decedent Nathan Banks[2] was sitting in the passenger seat of a parked vehicle with Jennifer Caldwell in

---

[1] Plaintiffs also list an unspecified number of currently unknown "DOE" Defendants.
[2] The Court will refer to Nathan Banks by his first name in this order to distinguish him from his

Antioch, California. *See* Compl. ¶ 27. Antioch Police Officer Michael Mortimer parked alongside the vehicle, first addressing Caldwell, who was sitting in the driver seat. *Id.* ¶¶ 28–30. Mortimer then walked to the passenger door, and—although Mortimer later acknowledged he did not feel threatened—"suddenly struck Nathan in the head with a flashlight and aimed his gun at Nathan." *Id.* ¶¶ 31–35, 37–38. As a result, Nathan suffered "a deep laceration to his forehead and a fractured skull[,] [m]ultiple blunt force head injuries on the right, fractures at the base of his skull[,] and a five (5) inch long fracture over the top of the skull." *Id.* ¶ 36.

After hitting Nathan with the flashlight, Mortimer allowed Nathan to exit the vehicle, but Nathan fell to the ground. *Id.* ¶ 40. "Fearing for his life," Nathan then "tried to flee." *Id.* ¶ 41. Without calling for backup, Mortimer chased Nathan on foot and shot him at least three times. *Id.* ¶¶ 42–49. After firing these fatal shots, Mortimer and K9 Officer Ryan White also "deployed a police dog to bite Nathan." *Id.* ¶¶ 18, 50, 105. Plaintiffs allege that home security videos and third-party witnesses captured much of these events. *See id.* ¶¶ 23, 43, 45.

Following Nathan's death, the Contra Costa District Attorney's Office investigated the incident. *Id.* ¶¶ 52, 55. However, Plaintiffs allege that there were serious problems with the investigation, including possible witness intimidation and evidence tampering. Specifically, although there were third-party witnesses to the incident, Defendants did not interview them; Defendants asked leading questions and relied on hearsay evidence; the pathology report omitted key injuries, including the fractures to Nathan's skull and that the gun shots struck Nathan from behind; and additional government reports conflicted with the Antioch police officers' own reports and ignored other conflicting evidence. *See id.* ¶¶ 19–21, 52–86, 89. Plaintiffs also allege that those involved in the investigation had themselves been the subject of prior misconduct claims. *Id.* ¶ 71.

Publicly, the City reported Nathan's death as "justifiable homicide," and no criminal charges were filed. *Id.* ¶¶ 87–88. Plaintiffs further allege that no investigative reports related to Nathan's death have been released, despite the County District Attorney's prior announcement

---

father and Plaintiff Gregory Banks.

2

that such reports would be released if no charges were filed. *Id.* ¶¶ 22–23, 25, 72, 83, 89–91. Plaintiffs first filed government claims with the City and County, but both were rejected. *Id.* ¶ 93.

Based on these alleged facts, Plaintiffs bring causes of action under 42 U.S.C. § 1983 for (1) unlawful seizure; (2) excessive force; (3) municipal liability[3]; (4) interference with Plaintiffs' access to the courts; as well as causes of action (5) under California Civil Code § 52.1; and for (6) battery. *Id.* ¶¶ 94–137. Plaintiffs seek damages, attorneys' fees[4] and costs, as well as funeral and burial costs. *Id.* at 25 ("Prayer for Relief").

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

---

[3] To the extent Plaintiffs' third cause of action for municipal liability also includes a claim for supervisory liability, *see* Compl. ¶¶ 115–23, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Nevertheless, because Plaintiffs allege that Mortimer supervised White when the police dog bit Nathan, *see* Compl. ¶¶ 7, 105, the Court construes Plaintiffs' complaint to include a seventh cause of action for supervisory liability against Mortimer under 42 U.S.C. § 1983. *See Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1182 (9th Cir. 2007) ("[A] supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them.") (quotation omitted).
[4] The Court notes that pro se litigants cannot recover attorneys' fees.

3

fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Additionally, "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation omitted). In addition, "[i]n civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). However, even a "liberal interpretation of a . . . complaint may not supply essential elements of the claim that were not initially pled." *See Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "[P]ro se litigants are bound by the rules of procedure," *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995), which require "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a).

Yet even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III. DISCUSSION

The Court addresses threshold issues about Plaintiffs' ability to bring the alleged causes of action against Defendants, before addressing the substance of their allegations.

### A. Authority to Bring Survival Actions

As an initial matter, the majority of Plaintiffs' claims are survival actions that seek to recover damages for Nathan's injuries rather than for Plaintiffs' own personal injuries. The Court, therefore, first analyzes whether Plaintiffs have the authority to bring these survival causes of action. *See e.g.*, *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1117, n.1 (9th Cir. 2017) (recognizing that the court has a duty "sua sponte to examine jurisdictional issues such as standing" even if the parties do not raise the issue themselves (quotation omitted)).

"In a survival action, a decedent's estate may recover damages on behalf of the decedent

4

for injuries that the decedent has sustained." *See Davis v. Bender Shipbuilding & Repair Co.*, 27 F.3d 426, 429 (9th Cir. 1994). In contrast, in a wrongful death action, "the decedent's dependents may only pursue claims for personal injuries *they* have suffered as a result of a wrongful death." *Id.* (emphasis added). "The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets the state's requirements for bringing a survival action." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). Here, California law governs whether Plaintiffs are authorized to bring their California and § 1983 survival actions. *See Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1051–52 (9th Cir. 2018) (directing courts to "fill gaps" in § 1983 actions "with state law when state law is not 'inconsistent' with federal law").

California's survival law, in turn, provides that "[a] cause of action that survives the death of the person . . . may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest." Cal. Civ. Proc. Code § 377.30. Therefore, if Nathan's estate has a personal representative, Plaintiffs cannot bring this action as Nathan's successors in interest. Both "personal representative" and "successor in interest" are terms of art that have specific meaning under California law. A "personal representative" means an "executor, administrator, administrator with the will annexed, special administrator, successor personal representative, [or] public administrator . . . ." Cal. Prob. Code § 58(a). And a "successor in interest" means "the beneficiary of the decedent's estate." Cal. Civ. Proc. Code § 377.11; *see also* Cal. Civ. Proc. Code § 377.10 (defining "beneficiary of the decedent's estate").

Here, Plaintiffs include Nathan's father, Gregory Banks; Nathan's daughter, Alexis Avalos; and the Estate of Nathan Banks ("Estate"). *See* Compl. ¶¶ 4–5. Although the Estate is not referenced in the body of the complaint, it is listed as a Plaintiff in the caption. *See id.* at 1. The Court therefore construes the Estate as a Plaintiff for purposes of this order. *See Karim-Panahi*, 839 F.2d at 623 ("[T]he court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt."). Nevertheless, Plaintiffs do not allege that they are either "personal representatives" or "successors in interest" such that they are authorized to bring survival actions under California law. It is not enough simply to be related to the decedent. Moreover, California

5

does not authorize an estate to sue at all. *See* Cal. Civ. Proc. Code § 377.30. Indeed, in California, "[a]n 'estate' is not a legal entity and is neither a natural nor artificial person [and] . . . can neither sue nor be sued." *Estate of Bright v. W. Airlines, Inc.*, 104 Cal. App. 2d 827, 828–29 (Cal. Ct. App. 1951).

The Court, therefore, finds that Plaintiffs have not sufficiently alleged that they are authorized to bring survival claims, and **DISMISSES** the survival causes of action on that basis. These survival claims include Plaintiffs' first cause of action under 42 U.S.C. § 1983 for unlawful seizure; the second cause of action under 42 U.S.C. § 1983 for excessive force; the fifth cause of action under California Civil Code § 52.1; and the seventh cause of action for supervisory liability, *see* Section I at 3, n.3 above. The Court further finds that Plaintiffs' third cause of action for municipal liability, insofar as it is premised on the excessive force claim, and Plaintiffs' battery claim[5] are also survival claims. In short, the only causes of action that are *not* survival claims are Plaintiffs' fourth cause of action under 42 U.S.C. § 1983 for interference with Plaintiffs' access to the courts, and Plaintiffs' third cause of action for municipal liability to the extent it is premised on this access-to-the-courts claim. The Court cautions that if Plaintiffs choose to amend their complaint to address their authority to bring survival claims, they must file an affidavit or declaration listing specific information and including a certified copy of Nathan's death certificate, as required by California law and detailed in California Civil Procedure Code § 377.32. *See* Cal. Civ. Proc. Code § 377.32(a), (c).

### B. Minor's Capacity to Sue

Relatedly, Defendants have raised a concern that Plaintiff Alexis Avalos may be a minor and requests that the Court appoint a guardian ad litem.[6] *See* City Mot. at 9, n.3. A minor's

---

[5] Although labeled as a "wrongful death" claim, *see* Compl. at 24, the injuries arising from the battery claim are Nathan's, not Plaintiffs', and so do not give rise to a wrongful death claim. *See Davis*, 27 F.3d at 429; *see also Ruiz v. Podolsky*, 50 Cal. 4th 838, 850 n.3 (Cal. 2010) ("The term 'wrongful death' is not used in the statutes defining a survivor action, but is reserved exclusively to refer to the independent actions of the decedent's heirs for their own injuries."). City Defendants' argument that "all known heirs" must be joined is thus inapposite. *See* City Mot. at 9.
[6] A guardian ad litem is "a guardian, usually a lawyer, appointed by the court to appear in a lawsuit on behalf of an incompetent or minor party." *AT&T Mobility, LLC v. Yeager*, 143 F. Supp. 3d 1042, 1052 (E.D. Cal. 2015) (quotation omitted).

capacity to sue is determined by the law of the minor's domicile. *See* Fed. R. Civ. P. 17(b)(1). Here, Plaintiffs state that Avalos "lives in Las Vegas, Nevada." Compl. ¶ 6. Nevada does not authorize unrepresented individuals under eighteen years of age to bring suit. *See* Nev. Rev. Stat. Ann. § 11.250(1). However, there is no evidence currently in the record that Avalos is a minor, so the Court denies the request to appoint a guardian ad litem at this time.

Nevertheless, because the court "must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action," Fed. R. Civ. P. 17(c)(2), the Court orders Plaintiffs to state in any amended complaint: (1) the age of each plaintiff; (2) where each plaintiff is domiciled; (3) the name and contact information of a general guardian[7] for any minor plaintiffs; and (4) if the minor plaintiffs have a general guardian, whether he or she is a lawyer or intends to retain one for purposes of this action. The Court also notes that pursuant to Federal Rule of Civil Procedure 5.2(a), filings with the Court should only include the minor plaintiff's initials rather than his or her full name. *See* Fed. R. Civ. P. 5.2(d).

### C. Official-Capacity Claims (Third and Fourth Causes of Action)

Plaintiffs bring their causes of action against the individual Defendants Mortimer, Livingston, Grove, Alexander, Colley, and Guichard in both their "individual and official capacit[ies]." *See* Compl. ¶¶ 7–8, 11–14. Defendants explain, however, that claims brought against the individual Defendants in their official capacities are redundant. *See* County Mot. at 5; Guichard Mot. at 9–10. The Court agrees.

"An official capacity suit against a municipal officer is equivalent to a suit against the entity." *Center for Bio-Ethical Reform, Inc. v. L.A. Cty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008). Therefore, "when both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." *Id.* Here, Plaintiffs' have brought suit against both the City and the County, as well as several individual Defendants involved in the subsequent investigation of Nathan's death. Because the City and County are Defendants in this action, it is unnecessary to bring claims

---

[7] A general guardian is "a guardian who has general care and control of the ward's person and estate." *Yeager*, 143 F. Supp. 3d at 1052 (quotation omitted).

1 against the employees of those entities in their official capacities. The Court therefore

2 **DISMISSES** Plaintiffs' official-capacity claims against the individual defendants without leave to

3 amend.

### D. *Monell* Claim (Third Cause of Action)

Plaintiffs allege municipal liability against the City and County for violating both Nathan's and Plaintiffs' constitutional rights. *See* Compl. ¶¶ 115–123. Pursuant to *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658 (1978), "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Rather, to plausibly state a claim for municipal liability under *Monell*, a plaintiff must allege unconstitutional conduct attributable to "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). In other words, the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* (quotation omitted). At the pleading stage, a plaintiff's *Monell* claim "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *See AE v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quotation omitted).

Here, Plaintiffs' *Monell* claim is premised on their second cause of action for excessive force and their fourth cause of action for access to the courts. *First*, Plaintiffs allege that the City and County had a practice or custom of using "unreasonable . . . force." Compl. ¶ 119. *Second*, Plaintiffs allege that the City and County had a practice or custom of "conduct[ing] a minimal investigation" into and covering up law enforcement-involved fatalities. *Id.* ¶¶ 117–18.

As discussed in Section III.A above, Plaintiffs have not established that they have authority to bring a *Monell* claim based on Mortimer's use of excessive force. And as discussed in Section III.E below, Plaintiffs have not adequately alleged a claim based on a deficient investigation or interference with Plaintiffs' access to the courts. Nevertheless, even assuming Plaintiffs can establish that their constitutional rights were deprived under their second and fourth causes of action, Plaintiffs fail to allege with any specificity that these constitutional deprivations were due

8

to a widespread practice or custom. It is not enough to conclude, without any factual support, that there were other similar incidents or that Defendants routinely engaged in these practices. *See* Compl. ¶ 119. Rather, Plaintiffs must allege specific facts establishing the existence of these other incidents and explain how they rise to the level of a practice or custom. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Plaintiffs have also failed to allege that the City, County, or their authorized policymakers were aware or had constructive notice of any unconstitutional conduct. This is not enough to survive a motion to dismiss. For these additional reasons, the Court **GRANTS** the motion to dismiss the third cause of action.[8]

### E. Access-to-the-Courts Claim (Fourth Cause of Action)

Plaintiffs' fourth cause of action is premised on Defendants' alleged interference with Plaintiffs' access to the courts. *See* Compl. ¶¶ 124–128. In support of this claim, Plaintiffs allege that Defendants "publicly disseminated misinformation" and "conceal[ed] facts and circumstances" about Nathan's death. *See* Compl. ¶ 126. These actions, they conclude, undermined their "ability to make an effective claim." *Id.* ¶ 128. Plaintiffs do not, however, specify the nature of the "claim" they unsuccessfully made.

"The Supreme Court held long ago that the right of access to the courts is a fundamental right protected by the Constitution." *Delew v. Wagner*, 143 F.3d 1219, 1222 (9th Cir. 1998). To state an access-to-the-courts claim, however, Plaintiffs must allege that official action "caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief." *Christopher v. Harbury*, 536 U.S. 403,

---

[8] City Defendants contend that Plaintiffs cannot bring a *Monell* claim at all because "Plaintiffs[] do not have a constitutional or federal-statutory right to have the police conduct a full, proper, or even competent investigation." City Mot. at 7. Yet this argument ignores the gravamen of Plaintiffs' allegations: that Defendants had a widespread practice or custom of fabricating, omitting, or tampering with evidence when investigating injuries and fatalities involving law enforcement. *See* Compl. ¶¶ 116, 126. The Court is not persuaded that Plaintiffs are foreclosed as a matter of law from bringing a *Monell* claim based on such allegations, if sufficiently pled. *See also* Section III.E, below.

414 (2002). Because this case is still pending, Plaintiffs have not established that Defendants' conduct has interfered with their ability to sue or seek redress in this Court. *See Karim-Panachi*, 839 F.2d at 625 (finding access-to the-courts claim "not ripe for judicial consideration" where underlying action not yet resolved). Nor have Plaintiffs alleged any facts to support a claim that Defendants' conduct somehow prevented them from suing or seeking redress in another forum.

However, the Court is not persuaded by Defendant's invitation to dismiss Plaintiffs' claim with prejudice. *First*, City Defendants and Guichard contend that Plaintiffs have access to all the relevant facts in this matter such that they cannot allege any cover-up or misinformation. City Mot. at 4–5. But this is a question of fact, and thus not suitable for a motion to dismiss. *Second*, City Defendants argue that there is "no federal right to seek criminal justice or to a certain kind of investigation or prosecution," and that "the fact that the cover-up may have prevented criminal prosecution does not constitute a viable action." *Id.* The Court agrees that Plaintiffs' cause of action would be improper to the extent it is premised on the lack of *criminal* charges brought against Defendants. *See Clinton v. Jones*, 520 U.S. 681, 718 (1997) ("Criminal proceedings . . . are public acts initiated and controlled by the Executive Branch."). Yet the Court cannot say, at this early stage, that there are no set of facts that Plaintiffs could allege regarding obstructed *civil* proceedings based on a deficient or doctored investigation that would support an access-to-the-courts claim.

Accordingly, the Court finds the access-to-the-courts cause of action premature and **DISMISSES** the fourth cause of action without prejudice. Because Plaintiffs' only allegations against individual Defendants Colley, Livingston, Grove, Alexander, and Guichard appear related to this access-to-the-courts claim, they are also dismissed without prejudice in their personal capacities.[9]

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motions to dismiss with leave to amend as to Plaintiffs':

---

[9] Because the Court dismisses the claim against Defendant Guichard, his qualified immunity argument is **DENIED AS MOOT**.

10

- Survival claims (*i.e.*, first, second, third, fifth, sixth, and seventh causes of action) because Plaintiffs have not established that they are authorized under California law to pursue such claims;
- *Monell* claim (third cause of action);
- Access-to-the-courts claim (fourth cause of action); and
- Personal-capacity claims against Colley, Livingston, Grove, Alexander, and Guichard.

The Court finds that Plaintiff cannot cure the legal deficiencies in the following causes of action merely by alleging additional facts, such that amendment would be futile. *See Lopez*, 203 F.3d at 1122. Accordingly, the Court **GRANTS** the motions to dismiss with prejudice as to:

- The Estate as an improper Plaintiff; and
- Plaintiffs' official-capacity claims against the individual defendants, each of whom Plaintiffs allege is an employee of the City or County.

The Court otherwise **DENIES** the motions to dismiss. The Court cautions Plaintiffs to carefully consider the above analysis when amending their complaint. Plaintiffs are encouraged to seek assistance at the Legal Help Center, which provides free information and limited-scope legal assistance to pro se litigants. More information about the Legal Help Center is provided at http://www.cand.uscourts.gov/legal-help. Any amended complaint must be filed within 28 days from the date of this Order.

The Court further **SETS** a case management conference for October 8, 2019, at 2:00 p.m. This **MOOTS** Docket No. 39.

**IT IS SO ORDERED.**

Dated: 9/23/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge

11